## MOORE *v.* MILLER.

("INCOME TAX CASE.")

INJUNCTION; INCOME TAX.

A decree of the Supreme Court of this District dismissing a bill in equity to enjoin the Commissioners of Internal Revenue from proceeding with the collection of the income tax, *affirmed.*

No. 429. Submitted February 14, 1895. Decided February 15, 1895.

The opinion of Mr. Justice HAGNER, of the Supreme Court of the District of Columbia, delivered January 23, 1895, contains a sufficient statement of the case; it was as follows:

The bill was filed in this court on the 22d of December, 1894.

The complainant John G. Moore, claiming to be a citizen of the United States and resident of New York City, alleges he is a shareholder in divers corporations organized and doing business in the United States, paying dividends from their net earnings to the complainant and to their other stockholders, from which net earnings divers sums of money will be paid to the complainant as such dividends during the year ending December 31, 1894; and in addition to such dividends he has an income derived from the gains and profits of his business embraced within Sections 27 and 28 of the act passed at the second session of the Fifty-third Congress (entitled "An act to reduce taxation, to provide revenue for the Government, and for other purposes," which became a law without the approval of the President), which is largely in excess of the sum of $4,000; and that the defendant, the Commissioner of Internal Revenue, threatens that he will, under the provisions of said act, proceed to assess the sum of 2 per cent. upon the amount of the complainant's income, including said dividends before

mentioned, in excess of said sum of $4,000 per annum; that such assessment and the amount the complainant will be required to pay as taxes under said act for the first year for which such assessment is made, will be in excess of the sum of $4,000; that under Section 29 of said act, the corporations before referred to are also required to pay a tax of 2 per cent. on their net earnings, respectively, without any regard to any dividends paid out of said net earnings; and that by Sections 27 and 28 the complainant is required to pay a like tax upon the moneys só paid to him as dividends by such corporations, thereby wrongfully duplicating the tax on the complainant; that by reference to Section 27 of said act he shows to the court that said taxation is unjust and unequal in this, that it discriminates against the complainant for the purposes of taxation between persons who are citizens of the United States; and wholly exempts such persons from taxation as aforesaid, who have an income of any amount up to and not in excess of the sum of $4,000 per annum, and thereby the complainant and all others in the same condition with him are denied the equal protection of the law.

He further shows, by reference to Sections 27 and 28 of said act, there is associated with the taxation of citizens of the United States, and subject to said proposed taxation and not separable therefrom, the provision that persons who are aliens, but who reside in the United States, whether permanently or only temporarily, shall likewise be subject to the payment of said tax on an income in excess of $4,000 per annum, although such income is derived wholly from rents, interests, dividends, salaries, or from any profession, trade, employment, or vocation, carried on elsewhere than in the United States; thus undertaking, unlawfully and without authority, to tax income of citizens of foreign countries alien to the United States, who may have within the United States a temporary residence for temporary purposes,

although such incomes are derived wholly from sources not within the jurisdiction of the United States.

That it appears by Section 32 of said act that no exception is made thereby from such taxation of incomes of such corporations within the United States (of which it is alleged there are many) which, although carried on for profit, are created, owned, and operated by the several States of the Union as instrumentalities and agencies of the governments of said respective States, and in promotion of the police and other public functions and policies of such States; and which corporations, so being such agencies of the respective States, are not subject to taxation by the United States.

That by the provisions of said act assessments are to be made upon the income of complainant and others that have been earned and received by him prior to the time at which the provisions of the said law took effect; and that all the taxes heretofore mentioned and attempted to be assessed and collected are not within the constitutional jurisdiction of Congress to impose.

That the defendant, the Commissioner of Internal Revenue, is threatening and intending and proceeding to take steps to make an assessment against the complainant under said provisions of said act, and to collect the same not only for the first year's income, but also, under the requirements of said act, for incomes hereafter to arise from year to year continuously until the year 1900; and that he and his successors in office will certainly continue until the last-named year to assess the complainant from year to year until the commencement of the said last-named year, and to collect such assessments; and that the defendant and his subordinates to that end are now preparing forms, rules, regulations and instructions, and are taking such steps as may be necessary in making such assessment and collection of said taxes on said incomes. And because of other defects and invalidity of said income tax enactment which appear upon the face of said act, the complainant avers and charges

that said act is invalid in the provisions so imposing said income tax, and in such provisions is unconstitutional, inoperative, and void; that if said taxes are collected he would be, as aforesaid, without adequate remedy at law for the redress of said illegal collections, and that, since the said collections of said taxes are, by the provisions of said act to be continuous, as aforesaid, until the 1st day of January, 1900, therefore, unless restrained by the action of this court, the complainant, as to the said illegal assessment, will be subjected to the harassment, expense, and annoyance of a multitude of said suits resorted to from the present time until the year 1900, in the enforcement of said illegal assessments.

As advised by counsel, he charges that if the said taxes are collected, although unlawful and unjust, he would be without remedy to recover the same from the United States; or if collectible at all, it could only be done by such vexatious, expensive, and long-continued litigation as would render the remedy useless.

The complainant therefore prays subpœnas, and "that during the pendency of this cause the said defendant and all other persons acting under him and by his authority may be restrained and enjoined from doing any act or acts looking to or contemplating the collection of said income tax in the foregoing bill of complaint mentioned and described as provided in said act," and that upon the final hearing of the cause, such injunction may be made perpetual, and for further relief.

To the bill the defendant, on the 27th of December, 1894, interposed a general demurrer, and the arguments have been heard upon this state of the pleadings.

Although it appears from the bill the formal allegations that the act is "invalid, unconstitutional, inoperative, and void" are predicated as well of the defects specifically set forth "as because of other defects and invalidities which appear upon the face of the act," yet as these additional defects have not been pointed out in the argument, it is assumed they are not insisted upon.

The objection that the act is to be considered as if the income tax imposed by it was in the nature of a direct tax, was adverted to by complainant's counsel, but he stated he did not feel at liberty to insist upon it, under the decisions of the Supreme Court in *Springer* v. *United States*, 102 U. S. 586, and *Pacific Insurance Company* v. *Soule*, 7 Wallace, 446.

All the objections pressed at the argument, that an income tax is an unwise tax upon thrift and industry ; that its operation must necessarily be grievously inquisitorial, and that such a measure belongs to the class of exceptional war measures and is not necessary or appropriate in times of peace, present questions which were for the decision of other departments of the Government; and with them the judicial department has nothing to do.

I shall examine the objections specifically set forth in the bill in the order in which they are stated.

First. It is insisted that as Section 32 of the act exacts a tax of two per cent. on the net profits or income of the corporations therein described, which net profits include the amounts paid to shareholders; and as by Sections 27 and 28 the complainant as a shareholder in some of those corporations is required to include in his return of income all dividends received from such corporations, it results that the tax on such dividends "is wrongfully duplicated" on the complainant.

This alleged duplication could not be claimed to be possible except as to dividends declared during the calendar year 1894; for by the last paragraph of Section 28 it is provided, "that in computing the income of any person there shall not be included the amount received from any corporation, company, or association as dividends upon the stock of said corporation, company, or association if the tax of two per centum has been paid upon its net profits by said corporation, company, or association, as required by this act." Of course the corporations will state in their returns for each subsequent year that they have retained for the tax

and propose to pay it, which would exonerate the shareholders from the charge.    With respect to the tax upon the dividends declared during 1894, a reasonable construction of the act and a disposition on the part of the corporations to comply with its provisions would also prevent any duplication of the tax.    It became a law in August, 1894.    From any dividends declared to the shareholders between that date and the 1st of March, 1895, such corporations would have the opportunity to retain the two per cent. on the dividends for 1894, and pay it with their tax in July, 1895; and their return, filed by the 1st of March, 1895, would state such payment, which would relieve the shareholders from computing the dividends in their income; but in cases where this is not done it is but fair to presume the officers of the Treasury would enforce the provision in such manner as to prevent a harsh construction, and that an arrangement by the corporations to pay the tax before July, 1895, would be accepted as relieving the shareholders.

But it is settled law that, vexatious as a duplication of taxation may be, it is not possible practically to avoid it in every case.    In Desty on Taxation, Vol. 1, p. 203, the author says: "The power to tax twice is as ample as to tax once; and that a tax reaches twice the same property is no objection to its validity."    As is said by Judge Cooley (Taxation, 513), "It is not essential to the validity that it is levied according to the rules of abstract justness.   .   .   .    Absolute equality and strict justness are unattainable in tax proceedings.   .   .   .    It must happen under any tax law that some property will be taxed twice, while other property will escape taxation altogether.   .   .   .    Nevertheless no question of constitutional law is raised by these regulations and hardships, and the legislative control is complete."

Second.    It is insisted the proposed taxation is unjust and unequal because it discriminates between citizens by wholly exempting from such taxation such persons as have incomes not in excess of $4,000 per annum, whereby the

complainant and all others in the same condition with him are denied the equal protection of the law.

This contention is based upon the claim that the exemption of incomes not exceeding $4,000 is at variance with the provision of the Constitution requiring " that all duties, imposts, and excises shall be uniform throughout the United States." Art. 1, Sec. 8. There is no other restriction (except as to export duties) imposed by the Constitution upon the taxation power of Congress, which, where not restrained by constitutional bounds, is limited only by the necessities of the Government. The wisdom or expediency of its actions in the exercise of this power is beyond the control of the judicial authority.

It has never been supposed that exemptions in tax laws are beyond the power of the State governments, even where their constitutions were explicit in requiring uniformity of taxation, as by declaring that each person in a State ought to contribute his portion of public taxes for the support of government according to his actual worth in real or personal property. *The Tax Cases,* 12 G. & J. 117 ; *Williams' Case,* 3 Bland, 186. If such general principles were always to receive a literal application, a tax upon property must include the outfit of the bootblack, and the monthly wages of a servant must be taxed as income. The effort to include everybody and everything would result in such cases in diminution rather than increase of revenue. The Supreme Court, in *Bell's Gap Railroad Company* v. *Pennsylvania,* 134 U. S. 237, uses this language on the subject: "The provisions of the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the law, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions; it may impose different specific taxes upon different trades and professions and may vary

the rates of excise upon different products; it may tax real and personal estate in a different manner; it may tax visible property only, and not tax securities or payment of money; it may allow deductions for indebtedness or not allow them."

That Congress had the right to exempt manufacturing property within the District of Columbia from taxation was admitted in *Welch* v. *Cook*, 97 U. S. 541, though the act was treated as a bounty law, which was capable of repeal at any time. And in *Gibbons* v. *The District of Columbia*, 116 U. S. 408, it was said, "In the exercise of this power (of taxation) Congress, like any State legislature unrestricted by constitutional provisions, may, at its discretion, wholly exempt certain classes of property from taxation, or may tax them at a lower rate than any other property."

The meaning of the requirement of uniformity in national tax laws is fixed by the decisions of the Supreme Court.

In the *Head Money Cases*, 112 U. S. 594, it was contended that the tax created by the act of 1882, which imposed a duty upon each passenger not a citizen brought by steam or sail vessel from a foreign port to any port in the United States, was not uniform in its character, since no such duty was imposed upon railroads or other inland conveyances carrying such passengers, and was therefore unconstitutional and void.

The court said: "The uniformity here prescribed has reference to the various localities in which the tax is intended to operate. It shall be uniform throughout the United States." Is the tax on tobacco void because in many of the States no tobacco is raised or manufactured? Is the tax on distilled liquors void because a few States pay three-fourths of the revenue arising therefrom?

"The tax is uniform when it operates with the same force and effect in every place where the subject is to be found. The law applies to all ports alike, and evidently gives no preference to one over the other, but is uniform in its operation in all ports of the United States." Mr. Justice Story,

in Section 957 (1 Story on Const.), answers the question "why duties, imposts, and excises are required to be uniform throughout the United States" in these words: "It was to cut off all undue preferences of one State over another in the regulation of subjects affecting their common interests. Unless duties, imposts, and excises were uniform, the grossest and most offensive inequalities vitally affecting the pursuits and employments of the people of the different States might exist. . . . And a combination of a few States in Congress might secure a monopoly of certain branches of trade and business to themselves, to the injury, if not to the destruction, of their less favored neighbors."

Mr. Curtis (Hist. Const., Vol. 2, p. 324) calls attention to the fact that while the convention was considering a proposition from the Maryland delegates to forbid legislation offering inducements to vessels to enter or clear in one State in preference to another (dictated by fear of discrimination against Baltimore in favor of ports on the lower Chesapeake), a clause was reported by the committee as a part of the Maryland proposition, in these words: "And all tonnage, duties, imposts and excises levied by the legislature shall be uniform through the United States;" which, on the final revision, was amended and separated from the regulation of commerce clause and annexed to the power of taxation. In the light of its history and of the opinion of the distinguished jurists above quoted, the counsel for the United States has warrant for his characterization of the required uniformity as rather geographical in its character, inasmuch as it was designed only to inhibit different rates of duty or tax upon the same subject in the different States.

But there is no discrimination in the act between the different persons who are authorized to avail themselves of the $4,000 exemption. Every person in the United States is equally entitled to its benefits, the complainant as well as every other; and his tax is reduced by its operation to the extent of 2 per cent. upon the $4,000 exemption. In this

District, and probably in every State in the Union, property below a designated value and various kinds of real and personal property, without limitation as to value, are exempted from assessment and taxation. That some property holders are fortunate enough to have possessions exceeding in value the excepted amount is no ground for invalidating the law under which the taxes are levied upon that excess.

Similar exemptions as to taxes on incomes appear in the original income tax law passed by Congress on August 5, 1861, and in each re-enactment and amendment of the act until its repeal. When these laws were before the Supreme Court and other courts of the United States, a great variety of objections were made to their validity, and their constitutionality was sustained. In 1841 the State of Maryland passed an income law in which similar exemptions of incomes beneath a designated amount appeared. In the English income act of 1853, the basis of the present law in that country, such exemptions of incomes below a designated sum were allowed, and in each of these acts there appeared numerous other exemptions of persons and occupations. But although it may be the exemption in the present law is decidedly larger than any of those in the systems I have referred to, the question of its reasonableness was for the decision of the legislature, which has adjusted the amount according to its own view of its propriety, as it had a right to do. As the Supreme Court said in *Veazie Bank* v. *Fenno*, 8 Wall. 548, "the judiciary cannot prescribe to the legislative department of the Government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected. So, if a particular tax bears heavily upon a corporation, or a class of corporations, it cannot, for that reason only, be pronounced contrary to the Constitution."

Third. The constitutionality of the act is next attacked,

because, by Sections 27 and 28, " there is associated with the taxation of citizens of the United States, subject to said proposed taxation, and not separable therefrom, the provision that persons who are aliens, but who reside in the United States, whether permanently or only temporarily, shall likewise be subject to the payment of said tax on an income in excess of $4,000 per annum, although such income be derived wholly from rents, interests, dividends, salaries, or from any profession, trade, employment, or vocation carried on elsewhere than in the United States."

The language of Section 27 differs somewhat from that used in this paragraph of the bill. That section provides the tax shall be levied on the income received in the preceding calendar year, " by every citizen of the United States, whether residing at home or abroad, and every person residing therein." Nothing is said of temporary residence, nor to indicate that mere sojourners or visitors are to be included; and what constitutes a residence, within the meaning of the act, must be for the determination of the courts in any particular case.

It is apparent the inclusion of the income of such alien residents within the assessment and tax could not be in any way injurious to the complainant. If it could operate at all upon his personal interests, its effect would rather be in the direction of relieving him from the continuance of the tax; and a party applying for an injunction must show some personal grievance, actually existing or impending. The provision is not new in income tax laws. Section 49 of the act of 5th of August, 1861, declared there shall be levied " upon the annual income of every person residing in the United States," a tax, etc., without anything to indicate the exemption of aliens; and the same expression is used in the act of July 1, 1862, which was substituted for the previous law.

In the income acts of Maryland no discrimination as to citizenship was made, and all persons in the employment of

foreign corporations doing business in the State were included; and the English act imposed a tax upon "the gains, etc., arising or accruing to any person or persons whatsoever, resident in the United Kingdom, from any kind of property whatever, whether situated in the United Kingdom or elsewhere; or from any annuities, allowances, or stipends, or from any profession, trade, or vocation, whether the same shall be respectively exercised in the United Kingdom or elsewhere."

That the legislature may rightfully subject an alien resident to the taxation to which its own citizens are subjected would seem to be clear. "The protection of the Government is the consideration for which taxes are demanded; and all persons who receive or are entitled to that protection may be called upon to render the equivalent. The protection may be either to the rights of persons or to the rights of property, and taxes may consequently be imposed when either person or property is within the jurisdiction." Cooley on Taxation, page 14.

The income laws I have referred to go quite as far as the present statute in subjecting to taxation incomes derived from rents or dividends, etc., on property outside of the United States, or on profits from professions or trade, etc., exercised elsewhere than in this country; and this right is abundantly justified by the authorities. *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Nevada Bank* v. *Sedgwick*, 104 U. S. 111; *Mager* v. *Grima*, 8 Howard, 494. In *Bonaparte* v. *Tax Collector*, 104 U. S. 595, where the court held a State can rightfully tax, as the property of a resident, the registered public debt of another State, although the debtor State may have exempted it from taxation or actually taxed it, the chief justice said: "All the obligations which rest on the holder of the debt as a resident of the State in which he dwells still remain, and as a member of society he must contribute his just share toward supporting the government

whose protection he claims and to whose control he has submitted himself."

The fourth ground of objection is that no exception is made in the act of the incomes of corporations within the United States (of which there are alleged to be many) which, although carried on for profit, are created, owned, and operated by the several States, respectively, as instrumentalities and agencies of those State governments and in promotion of their police and other public functions and policies; which corporations, so being agencies of the respective States, are not subject to taxation by the United States.

Again, it is not alleged the complainant is interested as a shareholder or otherwise in either of the corporations thus referred to. Having no personal grievance involved in the prosecution of this objection he must be considered as a voluntary applicant for the relief of the States alleged to be concerned. In this quality he has no title to injunctive relief.

The statute does not in words or by necessary implication include such corporations as are described; and Congress having no power to tax them it is to be presumed Congress did not intend to include them. No such corporations are named by the complainant. The bill is not sworn to by the complainant, nor is it supported by any evidence except so far as the act referred to sustains its averments. It is not alleged that the defendant, as Commissioner of Internal Revenue, intends to include such corporations by his construction of the act, or that he has prepared or ordered to be prepared any " forms, rules, regulations, or instructions " to that effect.

The averment that such corporations are not excepted out of the act is, therefore, a mere conclusion of law advanced by the complainant, and the demurrer does not admit the correctness of the conclusion.

In *Railroad Company* v. *Palmer*, 109 U. S. 252, the court said: " It is sought to avoid this conclusion by converting

the question into one of pleading. It is said the bill alleges as a matter of fact that the exemption passed to and vested in the complainant below, and that the truth of the allegation is admitted by the demurrer. But this is matter of law; the documents of title are exhibited with the bill and constitute a part. of the record, and we take judicial notice of their legal effect. A fact impossible in law cannot be admitted by a demurrer. In *Wilson* v. *Gaines*, 103 U. S. 417, it was inferred, in the face of a demurrer claimed to be an admission of a contrary allegation, that the sale did not pass any right of property not described as within the lien of the mortgage."

After an examination of the act, thus exhibited with the bill as its only support, I am of the opinion that an exemption of taxation on the income of such corporations "as are created, owned, and operated by the several States as instrumentalities and agencies of the governments of such States," as described in the bill, is effectively made therein, since no such corporations can be fairly comprehended within the particular description in the first paragraph of Section 32 of those required to make returns of income. I think also the first member of the first sentence in the fourth paragraph of that section, "that nothing herein contained shall apply to States, counties, municipalities," by its fair meaning would operate an exemption from taxation of such corporations as are instrumentalities and agencies of States, counties, or municipalities; and that those words must have been inserted in the paragraph as a declaration of that exemption.

It results that, in the opinion of the court, even though the complainant had the right to complain of this alleged error in the act, the contention is without legal foundation.

The fifth and last specific objection is that, by the provisions of the act, " assessments are to be made upon the said income of your complainant and others that have been

earned and received by your complainant prior to the time at which the provisions of said act took effect."

It is true the law went into effect in August, 1894, and that it requires the assessment after the 1st of January, 1895, of a tax upon incomes received in the preceding calendar year, which, for the first year, 1894, will comprehend those portions of said incomes which were received, or accrued, before the act took effect.

This provision is of the same character as those appearing in the former income acts of the United States.

The first act, passed on the 5th of August, 1861, declared that from and after the 1st of January, 1862, there should be levied an income tax, which should be assessed in the first instance "upon the annual income" for the year preceding the 1st of January, 1862," thus including in the return the income that had accrued during the eleven months next preceding the passage of the law. The act of the 14th of July, 1862, which superseded the first law, declared the tax should be levied on the 1st of May, 1863, upon the income of the preceding year ending on the 31st of December, 1862, including thereby the six months and a half of the year that had expired at the time the act was passed.

The English act of 1853, passed on the 28th of June, 1853, declared the income tax thereby established should be operative from and after the 5th day of the preceding April.

No authority was quoted in support of this contention, and I have been unable to discover any if it exists.

But the very point appears to have been decided the other way in *Stockdale* v. *Insurance Company*, 20 Wallace, 331, where Mr. Justice Miller said: "The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted, much less can it be doubted that it could impose such a tax on the income of the current year, though

part of that year had elapsed when the statute was passed. The joint resolution of July 4, 1864, imposed a tax of 5 per cent. on all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the act, or attempted to resist it."

I have thus far examined the specific objections set forth in the bill, as far as possible as if the application were one of an ordinary character, distinguished by no peculiar features from the usual petition for an injunction.

But the bill presents the exceptional prayer that this court shall declare as unconstitutional and therefore void all the provisions of the act of Congress relating to the income tax; and shall enjoin all proceedings looking to the collection of this portion of the public revenue under that act.

It is settled law that the suitor who challenges the constitutionality of an act of Congress must assume the burden of establishing that contention; that the violation imputed to Congress must be made manifest; and, in the language of Chief Justice Marshall in *Fletcher* v. *Peck*, 6 Cr. 87, " It is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers and its acts to be considered void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." It is well to remember that so cautiously has this, the highest power confided to the courts, been exercised that the cases in which acts of Congress have been pronounced unconstitutional by our highest judicial tribunal, during the century of its existence, may be reckoned by being counted on the fingers of the two hands.

It is equally familiar law that courts of equity are always averse to interfere with the collection of taxes; that they will never attempt to restrain the execution of a tax law merely because of the illegality, hardship, or irregularity of the tax complained of; that when even in the exceptional

cases where a court of equity has entertained a bill to restrain the collection of a tax (where it was unauthorized by law or assessed on property not subject to taxation), special circumstances must also appear, bringing the case under some head of equity jurisdiction, as that its enforcement would cause irreparable injury or occasion a multiplicity of suits, and that the party has no adequate remedy at law." *Pacific Express Co.* v. *Seibert,* 142 U. S. 348.

In the case before us the special grounds alleged for the interposition of equity are the absence of any adequate remedy to recover the taxes if paid over to the collector, and that in case such remedy exists a multiplicity of suits would result from invoking it.

I have already decided that the predicate of the jurisdiction (the unconstitutionality of the act) does not exist. It may, however, be well to examine these special grounds for interference.

The right of a party who has made an involuntary payment under protest to a collector of taxes having no legal right to demand it, to recover the money back, cannot be doubted, irrespective of any statutory provisions, and the party receiving it cannot escape responsibility by having paid it over to the Government. *Towson* v. *Wilson,* 1 Camp. N. P. 396. In *Elliott* v. *Swartwout,* 10 Pet. 153, decided in 1836, the court held, in the absence of any statute, that a collector of customs was liable in an action to recover excess of duties paid to him under protest; and in *Philadelphia* v. *The Collector,* 5 Wall. 720, the city recovered for duties paid under protest in 1862, before the passage of the provision now constituting Section 3226 of the Revised Statutes, which was passed in 1866. The latter act was but a limitation of the pre-existing right, restricting the time within which such action should be brought.

Payments made to collectors of the income tax under such conditions have been repeatedly the subject of recovery. Among the numerous cases of this description

brought to the Supreme Court are *Collector* v. *Day*, 11 Wall. 113; *Stockdale* v. *Insurance Company*, 20 Wall. 323, and no question of the right to recover was made by the court.

The objection on the ground of multiplicity of suits is equally untenable. That separate actions at law would have to be brought by the party paying under protest, in respect of the tax for each successive year, is true. But each suit would present different features, constituting a distinct cause of action. None brought for future years could resemble that brought with reference to the tax for 1894, for that must differ in several particulars from any tax that can be levied for the following years. *Non constat* that Congress may not modify the tax hereafter, as it has the right to do, at its pleasure, during the five years before 1900, thereby creating still greater disagreement between the different assessments against the complainant. The resulting suits would be "for distinct and separate causes of action." *Railroad Company* v. *Missouri*, 152 U. S. 314.

"Relief by injunction for the prevention of multiplicity of suits is allowed only where the subject matter of the litigation is substantially the same, and not where each has a distinct object, founded on distinct and separate grounds." 1 High on Injunctions, Sec. 65.

Again, it is apparent from an examination of the act that many of the duties imposed by it upon the Commissioner of Internal Revenue, with respect to the tax on incomes, are of such a nature as involve the exercise of discretion by that officer in their performance. Among others is the decision of the manifold questions that must constantly arise as to the construction of points under the law, and the determination of appeals from collectors; which decisions are declared to be final, so far at least as the office is concerned. That discretionary duties of this character devolved on a public officer are not controlled by mandamus or by the writ of injunction, in some respects a correlative remedy, is common knowledge; and yet the present application would result in substituting

the opinion of the court as the guide of that official discretion, in case it did not go to the further extent of nullifying the entire provision as to the tax on incomes.

Finally, it is contended on the part of the defendant that the courts are without authority to grant an injunction in such a case as this, because of the provision of Section 3224 of the Revised Statutes of the United States, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

The complainant, as I understand, insists this section can have no application to suits respecting a special tax, like the income tax, but refers only to those affecting the general taxes forming the internal revenue.

The language is certainly broad enough. "Any tax" would seem to comprehend the income tax, as well as all others.

It was passed in March, 1867, as an amendment to Section 19 of the Act of July, 1866, Ch. 184, which now forms Section 3226 of the Revised Statutes. Both statutes were revisions of previous acts affecting income taxes, as well as other internal revenues. The word "any" was inserted in the revision, and would seem to make the section rather more comprehensive than it was originally. I think it became applicable to the income taxes, as well as to all other taxes named in either of those statutes.

Such was the decision of Judge Benedict in *Robbins v. Freeland, Collector,* in July, 1871, before the revision of the statutes, reported in 14 Internal Revenue Record, at page 28. The complainant there had applied for an injunction to restrain the collector from collecting an income tax, and the judge (citing *Pullen* v. *Kinsinger,* 2 Abbott U. S. Reports) held the court was forbidden by the Act of March, 1867 (now Section 3224), from entertaining the motion.

The complainant further insists that Section 3224, if it has any application to this income tax, is itself illegal, as depriving a party of the means of testing the validity of an unconstitutional statute.

The argument of the counsel on this point amounted substantially to this—that as an unconstitutional act is no law at all, no right to collect revenue under it can exist, and it cannot be considered as a revenue law in any way; and hence the act of 1867 (Section 3224) cannot apply to a sort of edict, professing to be a law but really no law; as that statute was designed to refer to real revenue acts and not to counterfeits of them.

I think the idea presented was answered by the Supreme Court in *Snyder* v. *Marks*, 109 U. S. 192, where Mr. Justice Blatchford said: "There is, therefore, no force in the suggestion that Section 3224, in speaking of a tax, means only a legal tax; and that an illegal tax is not a tax, and so does not fall within the intention of the statute, and the collection of it may be restrained. The statute clearly applies to the present suit, and forbids the granting of relief by injunction."

The regulation of remedies rests entirely with the legislature, subject only to the limitation that some substantial mode of redress is left to the citizen. The act of 1867 (Section 3224) was evidently intended to prevent the ruinous consequences that might result to the credit or even the existence of the Government, if the courts everywhere on the application of different persons had full authority to restrain all proceedings under laws to collect its revenues. The mischiefs to the whole country that might result are obvious to all; they are strongly set forth by Mr. Justice Field in *Davis* v. *United States*, 11 Wall. 113, and by Mr. Justice Miller in *Cheatham* v. *United States*, 92 U. S. 89.

Mr. Maclay's account of the unpublished debates of the Senate in the First Congress shows how strong was the opposition to the grant of any equity jurisdiction to the courts of the United States; and that it was appeased by the express reassertion in the judiciary act of the provision (Section 723, Revised Statutes) denying them the exercise of any jurisdiction where a plain, adequate, and complete remedy could be had at law. It would, of course, have been in the power of

that Congress to impose further limitations upon the powers of those courts, and their successors equally possessed the same power. Accordingly, in March, 1793, Congress acted in that direction by declaring that the United States courts should not have authority to grant injunctions to stay proceedings in State courts, and on the revision in 1874 they abridged that restriction by allowing such injunction in cases in bankruptcy. Revised Statutes, Sec. 720.

The act of March, 1867 (Section 3224) was but another exercise of the power to regulate the remedy by injunction; and there can be no ground for questioning its validity; as there was left a substantial mode of redress to the citizen against illegal taxation.

It was upon this principle that the Supreme Court sustained the validity of the Virginia statute that denied to its courts the authority to issue writs of mandamus in litigations concerning coupons on the State bonds; on the ground that the holder still had other methods of asserting his rights. *Antoni* v. *Greenhow,* 107 U. S. 769.

The act of 1867 leaves the taxpayer in full possession of ample means of contesting the legality and regularity of assessment and levy, by proceedings at law, such as have been pursued in innumerable cases. *United States* v. *Railroad,* 4 Dillon, 69.

It does not even deprive the equity courts of all jurisdiction with respect to taxation; whatever other equitable jurisdiction they might have in such matters remains, only the power to issue injunctions with respect to them being denied.

I regret to have prolonged this opinion to so great an extent, but I thought a thorough examination of the various points was due alike to the great public importance of the subject, and to the admirable manner in which the able counsel have presented their respective contentions.

Being of the opinion that for the several reasons stated

the complainant is not entitled to the relief claimed, I shall sign a decree dismissing his bill.

*Mr. George F. Edmunds* and *Messrs. Shellabarger & Wilson* for the appellant.

*Mr. Assistant Attorney General Edward B. Whitney* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case has been brought into this court, on its way to the Supreme Court of the United States, as we have been informed, with a request by counsel that it should have an early hearing, and we accordingly advanced the case on the calendar, and have heard argument, in order that it may reach the court of last resort in time to be heard there in connection with pending cases in that court, presenting the same or similar questions as those presented by this case, and which cases in the Supreme Court have been specially assigned and will likely be heard by that tribunal within the next few weeks.

With that object in view, there can be no good or useful purpose subserved by any elaborate consideration by this court of the questions presented by the bill and demurrer. Some of the questions raised may well admit of grave and careful argument and consideration, if presented under proper conditions. But in this case, and as now presented, we do not perceive that there is any good ground or cause shown for an injunction to restrain the Commissioner of Internal Revenue from proceeding with the work of his bureau in respect to the assessment and collection of the Income Tax, under the act of Congress of 1894. The court is asked to take cognizance of and deal with the case before the facts are brought into existence to constitute the foundation for the exercise of jurisdiction, even supposing the court competent to extend relief by injunction, notwith-

standing the positive prohibitory terms of the statute, embodied in Section 3224 of the Revised Statutes of the United States, which declares that "no suit for the purpose of restraining the assessment or collection of any tax, shall be maintained in any court."

The learned justice below has considered this case at large, and has decided all the questions attempted to be raised by the bill, and he has reached the conclusion that there was no sufficient ground presented to justify the exercise of the restraining power of a court of equity, in any aspect of the case. And, without considering and deciding the main questions presented by the bill, we concur in the conclusion reached by the justice below, that there is no sufficient cause alleged or shown for the extraordinary remedy by injunction, and therefore the decree dismissing the bill should be affirmed ; *and it is so ordered.*

*Decree affirmed.*

[See *Powell* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429 ; S. C., 158 U. S. 601.—REPORTER.]